**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rosemary Stewart,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Bank of New York Mellon, f/k/a The Bank of New York, as Trustees for the Holders of the GE-WMC Asset-Backed Pass-Through Certificates, Series 2006-1; Litton Loan Servicing Corp.; First Capital Lending, Inc.,<br><br>　　　　Defendants. | No. CV-10-791-PHX-GMS<br><br>**ORDER** |

Pending before this Court are: (1) Motion To Dismiss Plaintiff's First Amended Complaint by Bank of New York Mellon ("Mellon") and Litton Loan Servicing LP, ("Litton") Doc. 28; and (2) Plaintiff's Motion For Leave To Amend Complaint, Doc. 49. For the reasons stated below, Plaintiff's Motion for Leave to Amend, Doc. 49 is granted, and Defendant Mellon and Litton's Motion to Dismiss, Doc. 29, is granted in part and denied in part.

**BACKGROUND**

According to the Amended Complaint, Doc. 27, Plaintiff is in her eighties and has lived in her home, which is the property at issue in this lawsuit, for approximately thirty years. Doc. 27 at ¶ 7. On May 23, 2006, Plaintiff refinanced her home with Defendant First

1 Capital in the amount of $425,000. Prior to her refinance, Ms. Stewart had a first mortgage on her property in the amount of approximately $269,000. Doc. 27 at ¶ 8. She had a second mortgage on the property in the amount of approximately $69,000. *Id.* at ¶ 9. First Capital actively and continuously solicited Ms. Stewart to refinance her property through First Capital. It further encouraged Ms. Stewart to increase the size of her refinance loan despite her expressed concerns about doing so. *Id.* at ¶¶ 13-21. First Capital generated a Uniform Residential Loan Application, signed on the date of the closing, that overstates Ms. Stewart's income, excludes her social security income, includes assets that she did not possess, and underestimates closing costs. *Id.* at ¶ 26. First Capital's agents allegedly misrepresented the terms of the refinance to Ms. Stewart, and the information contained in the documents was inaccurate. *Id.* at ¶¶ 32-37.

Ms. Stewart repeatedly, but unsuccessfully, attempted to obtain the documents pertaining to the refinance from First Capital. *Id.* at ¶¶ 38-42. After First Capital ceased operations in Arizona, Plaintiff alleges that Mellon eventually purchased the loan and became First Capital's successor in interest. *Id.* at ¶ 50. Ms. Stewart sent her payments to Litton which indicated that it was the servicer of the loan. *Id.* at ¶¶ 43-44. Although Ms. Stewart attempted to obtain all documents pertaining to her loan from Litton, Litton indicated to her that it did not or may not have had all of her loan documents.

Eventually Quality Loan Service Corp., apparently the successor trustee on the deed of trust, recorded a notice of trustee's sale for May 1, 2009. *Id.* at ¶ 46. After getting notice of the deed of trust sale, Ms. Stewart sent a letter purporting to rescind the refinance pursuant to the provisions of the Federal Truth in Lending Act to Defendants. Mellon did not respond, and Ms. Stewart filed bankruptcy. Ms. Stewart alleges that Defendants persisted in their efforts to notice a deed of trust sale, despite their statements to the bankruptcy court to the contrary. The noticed deed of trust sale was cancelled, but, apparently, has been renoticed for this July.

Plaintiff initially filed her suit in Maricopa County Superior Court, but the Litton Defendants removed it to this Court. The Mellon and Litton Defendants moved to dismiss

the complaint, and those motions were granted with leave to amend, Doc. 26. Plaintiff, thereafter filed her Amended Complaint, Doc. 27.

The Amended Complaint includes a variety of claims based on both federal and state law. The Amended Complaint asserts claims against Defendants First Capital and Mellon for: a violation of the Fair Housing Act (count one), financial exploitation of a vulnerable adult (count two), Truth in Lending Act Violations (count three), fraudulent inducement (count four), consumer fraud (count five), a Federal Credit Repair Act Organizations violation or violations (count six), breach of the covenant of good faith and fair dealing (count seven), failure to honor rescission notice under the Truth in Lending Act (count eight), negligent infliction of emotional distress, (count nine), and intentional infliction of emotional distress (count ten).

Thereafter, Defendants Mellon and Litton moved to dismiss the amended complaint. Doc. 28. In her response, Plaintiff concedes that claims 1-6 are not brought against Litton and claim 3 is not brought against Mellon. Doc. 34 at p.1.

Before this Court ruled on Mellon and Litton's pending motion to dismiss, Plaintiff filed a motion to file a Second Amended Complaint ("SAC") after finally obtaining service on Defendant Capital Lending. In the moving Defendants' Response in Opposition, Doc. 50, Defendants argue that with the exception of claim eight of the proposed SAC, the changes in the amendment are futile. They therefore, request that the Court either grant the motion for leave to amend with respect to count eight, and deny it in all other aspects, or grant the motion and nevertheless rule on its Motion to Dismiss with respect to the remaining counts that are not materially changed from the Amended Complaint.

**ANALYSIS**

**I.    The Motion to Amend.**

The proposed SAC does not add to or change the causes of action asserted in the amended complaint. It does, however, add a few pertinent general allegations as well as a few pertinent details to some of the existing claims–especially to the extent that those claims are stated against First Capital, the newly-served Defendant. For that reason, and because

- 3 -

the Court determines that it is best not to rewrite Plaintiff's Complaint by permitting amendment as to some claims and denying it as to others, the Court grants Plaintiff's Motion to Amend in its entirety, Doc. 49.

Nevertheless, as Litton and Mellon argue, most of the amendments would not and do not change the basis for dismissal asserted in Defendants currently pending, and fully briefed, Motion to Dismiss that pertains to the amended complaint. In this comparatively rare circumstance, this Court sees no benefit in making the parties refile their already briefed motion. Therefore, it agrees with moving Defendants that it is appropriate to rule on their Motion to Dismiss as it pertains to many of the counts in the SAC. Therefore, for the reasons stated below, Defendants' Motion to Dismiss is granted as to both Defendants on counts one, two, four, five, six, nine and ten. The motion is also granted on the SAC on counts three and seven as to Litton only. Defendants' Motion is denied as to count eight as to both Defendants, and denied as to Defendant Mellon on counts three, and seven.

**II. The Claims in the Second Amended Complaint.**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[;]" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

**A. Counts One Through Six.**

The SAC adds no additional or material allegations to counts one (fair housing act violation), two (financial exploitation of a vulnerable adult), four (fraudulent inducement), five (consumer fraud), and six (federal credit repair organizations act violation) as they are pled in the Amended Complaint. It does make a few additional, arguably material, changes to count three (TILA violation).

The great bulk of the allegations in each of these counts pertains to actions and representations taken by First Capital in fraudulently inducing Plaintiff to refinance through First Capital, and then refusing to provide Plaintiff, upon her request, the documents pertaining to the refinance. The SAC then contains a paragraph or two in each count detailing why Mellon should also be held liable for such acts.

A standard basis for imposing liability on Mellon as alleged in counts one, through six of the SAC is that Mellon is the ultimate successor to First Capital and "Defendant Mellon exerts a substantially similar degree of ownership and control over the loan as First Capital." Doc. 49-1 at ¶¶ 80, 89, 103, 121, 136, 144. This allegation, by itself, is insufficient to state a claim for successor liability as to Mellon. It completely fails to plead the existence of any fact or facts sufficient to make plausible a relation between Mellon and First Capital that would give rise to successor liability, or any other basis upon which Mellon would become liable for the actions of First Capital. This is especially the case when, as the SAC avows, Mellon apparently did not claim any role with respect to this matter until 2009–three years after the refinance occurred. Doc. 49-1 at ¶ 49d. Therefore, Plaintiff has failed to state a plausible claim based on successor liability as to any of the first six counts in the SAC.

Nor do any of the additional paragraphs asserted in counts one, two, four, five or six succeed in stating a claim against Mellon. Nevertheless, for the reasons stated below the Court declines to dismiss count three at this time.

**B.      Federal Fair Housing Act Claim (Count One)**

In addition to alleging that Mellon was First Capital's successor in the Fair Housing Act ("FHA") claim, Plaintiff alleges that "Defendant Mellon either knew or should have known of the loan defects from a facial examination of the loan documents and therefore should be held responsible for the damages suffered by Mrs. Stewart." *Id.* at ¶ 79. This is insufficient to state a claim for a FHA violation against Mellon.

Fundamentally, FHA claims are based upon discriminatory activity by the Defendant. Plaintiff has done nothing to state what Mellon did that was discriminatory or that otherwise violated the FHA. Plaintiff does nothing to suggest first, that a facial examination of the loan

1 documents would have alerted Mellon to a violation of the FHA, and even if it had, that such awareness would, in and of itself, make Mellon liable for such discrimination. The regulation cited by Plaintiff only provides FHA liability for assignees who themselves "engage in unlawful conduct." 124 C.F.R. § 100.125(a). Plaintiff's pleadings provide no sufficient allegation that Defendant did engage in such conduct or what that "wrongful conduct" was.

### C. Financial Exploitation of a Vulnerable Adult (Count Two)

Plaintiff makes no allegation suggesting why Mellon should be held liable for Capital's asserted financial exploitation of her. She merely restates that Mellon is a successor in interest to Capital. *Id.* at ¶ 89. As has been previously stated, such an allegation provides no basis on which Plaintiff states a plausible claim that Mellon should be held responsible for Capital's asserted financial exploitation of the Plaintiff, nor does it plausibly suggest that Mellon had any role in doing so sufficient to state a claim against Mellon.

### D. Truth In Lending Act Claim (Count Three)

In its Response to Defendants' motion to Dismiss, Plaintiff acknowledges that she asserts no TILA claim against Mellon, nor does she assert such claim against Litton, Doc. 34 at p. 1, and that this count should be dismissed with leave to amend. The averments of the SAC which was later filed, however, add to this count a claim for rescission and continue to assert liability on the part of Mellon. Since it is unclear whether Plaintiff wishes to restate her TILA claim against Mellon in the SAC, and the additions made in the SAC amendment may be material to the question of whether a TILA claim has been appropriately stated against Mellon, the Court will deny Defendants' Motion to Dismiss at this point, as it pertains to Count Three.

### E. Fraudulent Inducement (Count Four)

Although Plaintiff has made substantial additions to the allegations of this count, all of the additions, save one, relate solely to the conduct of First Capital and its agents. Plaintiff, did not change her allegation that Mellon is liable for First Capital's fraud merely because it was First Capital's successor in interest. As has already been explained above,

however, such an allegation is insufficient to hold Mellon responsible for First Capital's allegedly fraudulent acts, and Plaintiff offers no facts or plausible allegations that the transfer of assets was for the "fraudulent purpose of escaping debt liability." *Warne Invs., Ltd., v. Higgins,* 219 Ariz. 186, 191 (App. 2008).

In the SAC Plaintiff also alleges, as she did in the amended complaint, that "Mellon knew or should have known, by the appearance of documents and/or upon a cursory review of the documents that Defendants fraudulently induced Mrs. Stewart to enter into her loan agreement." *Id.* at ¶ 122. The SAC also adds the new allegation that "Mellon is also a sophisticated financial enterprise that either intentionally or negligently failed to review the circumstances of First Capital's origination of this loan." *Id.* at ¶ 123.

Nevertheless, Plaintiff does nothing to allege why a facial examination of the loan documents would have alerted Mellon that Ms. Stewart was fraudulently induced to enter into the loan, and even if it had, that such awareness would, in and of itself, make Mellon liable for the fraudulent inducement committed by First Capital. Second, even assuming that Mellon is "a sophisticated financial enterprise and that it either intentionally or negligently failed to review the circumstance of First Capital's origination of this loan" that allegation does not successfully state a claim for fraud against Mellon.

To the extent that Plaintiff seeks to assert claims of fraud against the individual Defendants he must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). There are nine elements required to plead common law fraud in Arizona. *Nielson v. Flashberg*, 101 Ariz. 335, 338, 419 P.2d 514, 517 (1966). Each fraud claim must be plead with particularity as to each Defendant against which the Plaintiff raises such claims. A Plaintiff must "state the time, place and specific content of the false representation as well as the identities of the parties to the misrepresentations." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F2d 1393, 1401 (9th Cir. 1986); *A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030, 1033 (D. Ariz. 1989) (holding that "[m]ere conclusory allegations of fraud will not suffice; the complaint must contain statements of the time, place and nature of the alleged fraudulent activities."). This, Plaintiff has not done as

it relates to either of the moving Defendants.

### F. Consumer Fraud (Count Five)

The basis of Plaintiff's consumer fraud claim against Mellon is not changed in the SAC. In that pleading, Plaintiff alleges that "[b]ut for the negligent or active cooperation by Mellon in purchasing loans either with knowledge of the fraudulent activities of the originator or the negligent review of such loans First Capital would not have been able to perpetrate its fraudulent scheme." *Id.* at ¶ 121. Under *Iqbal* conclusory pleadings are insufficient. By the SAC itself Mellon did not become involved with Plaintiff's property until 2009, three years after the refinance agreement was reached. Thus, the allegation that "First Capital would not have been able to perpetrate its fraudulent scheme but for the negligent or active cooperation by Mellon," without more detailed pleading, does not state a plausible claim against Mellon.

### G. Federal Credit Repair Organizations Act Violations (Count Six)

The basis of Plaintiff's Federal Credit Repair Organizations Act claim against Mellon is that "Mellon knew or should have known, by the appearance of documents and/or upon a cursory review of the documents that First Capital made untrue and misleading representations of their services and engaged in fraudulent and deceptive practices.' *Id.* at ¶ 129. Such a statement, without more, does not suggest what Mellon did to violate the Act, why a facial examination of the loan documents would have alerted Mellon to a violation of the Act, and even if it had, that such awareness would, in and of itself, make Mellon liable for such a violation.

### H. Count Seven (Breach of the Covenant of Good Faith and Fair Dealing)

Plaintiff has not pleaded that she had any contractual relationship with Litton. She has not, therefore, stated a claim against Litton for a breach of the implied covenant of good faith and fair dealing that accompanies every contractual relation. *See Schwartz v. Chase Home Finance, LLC,* 2010 WL 5151326, *2 (D. Ariz. Dec. 13, 2010) ("While it is true that a covenant of good faith and fair dealing is implied in every contract, Plaintiff must actually plead facts demonstrating the existence of the underlying contract."). Plaintiff, however, has

alleged a claim against Mellon for breach of the contractual covenant to the extent that the claim alleges that Mellon failed, or Litton as Mellon's agent failed, to appropriately respond to Plaintiff's requests for loan documentation. The parties contest whether Plaintiff may seek tort damages based upon the breach of implied covenants. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 490-91, 38 P.3d 12, 28-29 (2002). However, the sole question that the Court is called upon to decide at this time, is whether Plaintiff has stated a claim against Defendants. Plaintiff has adequately stated a claim against Mellon for the breach of the covenant of good faith and fair dealing.[1]

### I. Count Eight (Failure To Honor Rescission Notice)

In its Response to Plaintiff's Motion to Amend, the moving Defendants acknowledge that the SAC cures any deficiencies that they asserted as a basis to dismiss this count of the Amended Complaint. Count eight, therefore, is not dismissed as to either of the moving Defendants.

### J. Count Nine (Negligent Infliction of Emotional Distress)

In the SAC, on count nine, Plaintiff has added the specification that "Litton and Mellon continue to the present day in their efforts to foreclose on Mrs. Stewart's home, including scheduling Mrs. Stewart's home for a Trustee's Sale in July 2011." Doc. 49-1 at ¶ 192c. They have further added to paragraph 194 that now states "Litton and Mellon knew or should have known that their conduct, including their continued attempts to foreclose absent the right to do so, would lead to emotional distress but they disregarded that risk and

---

[1] For the first time in the Reply, Defendants argue, based on *Silvas v. E*Trade Mortg. Corp.,* 513 F.3d 1001, 1006 (9th Cir. 2008), that federal law preempts state law claims relating to the service of mortgages. This Court, however, does not address arguments made for the first time in a Reply. *See Delgadillo v. Woodford*, 527 F.3d 919, 930 n. 4 (9th Cir. 2008) ("Arguments raised for the first time in [the] reply brief are deemed waived."); *Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.*, 663 F. Supp.2d 841, 848 (D. Ariz. 2009) ("The Court need not consider Defendants' position, however, since it was first raised in their reply brief . . . . Thus, even if the argument has merit, this Court cannot appropriately consider it, since Plaintiffs did not have the opportunity to respond.").

the consequences of their actions." *Id.* at ¶ 194.

To state a claim under the type of negligent infliction of emotional distress that Plaintiff asserts here, Plaintiff must show, as the first element, that the Defendants "(a) should have realized that [their] conduct involved an unreasonable risk of causing the distress. . . . , and (b) from facts known to [them] should have realized that the distress, if it were caused, might result in illness or bodily harm." Restatement (Second) of Torts, § 313 (adopted by *Ball v. Prentice,* 162 Ariz. 150, 152 (App. 1989).

As this Court has previously observed,

> The Court is aware of no authority finding lenders seeking to foreclose . . . homes in default to be acting unreasonably. . . . Defendant did not mistakenly schedule a Trustee sale of Plaintiff's house. Rather Defendant scheduled the Trustee sale because Defendant was in default on Loan # 1. . . . [E]ven though the anticipated Trustee sale has likely caused Plaintiff distress, Defendant did not act unreasonably in pursuing the Trustee sale.

*Jones v. Bank of America,* 2010 WL 2572997, at * 14 (D. Ariz. June 22, 2010).

Here, to plausibly state a claim that Defendants have acted unreasonably with respect to Plaintiff in repeatedly noticing the Trustee's sale, Plaintiff would need to allege that she was not in default on the loan or other facts which would state a plausible basis to believe that Defendants might have been acting unreasonably.

Further, Plaintiff has done nothing to plausibly allege that from the facts known to Mellon and Litton who merely purchased the note three years later, they should have realized that the notices of foreclosure would result in illness or bodily harm to Plaintiff. Plaintiff has thus failed to state a claim for the negligent infliction of emotional distress.

### K.  Count Ten (Intentional infliction of Emotional Distress)

The SAC alleges that the moving Defendants demonstrated extreme and outrageous behavior that falls well outside the bounds of decency in a civilized society by (a) ignoring Plaintiffs repeated requests for information about the documents she had supposedly signed and by repeatedly demanding payments on her loan, (b) failing to respond to her rescission efforts and continuing the foreclosure efforts, and (c) by scheduling her home for a Trustee's sale while her case was being litigated. Doc. 49-1 at ¶ 204.

- 10 -

1    The three elements of intentional infliction of emotional distress are: 1) the Defendant acted in an extreme and outrageous manner toward the Plaintiff; 2) The Defendant either intended to cause emotional distress or recklessly disregarded the near certainty that emotional distress would result; and 3) Plaintiff actually suffered emotional distress because of the conduct. *See Nelson v. Phoenix Resort Corp.,* 181 Ariz. 188, 199 (App. 1994).

To satisfy the first element of the tort Defendants conduct must be "so outrageous in character and so extreme [in] degree, as to go beyond all possible bounds of decency, and . . . regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing, Int'l,* 183 Ariz. 550, 554 (App. 1995). Courts are required to make that initial determination. To the extent that the SAC alleges that Defendants committed an outrageous and utterly intolerable act by seeking to foreclose the deed of trust on a loan in default, they fail to state a claim. As this Court also stated in *Jones* Defendants have

> a legitimate business interest in foreclosing on houses whose occupants fail to make their loan payments. . . . Defendants [have] a legitimate interest in selling Plaintiff's house to repay the loan. This conduct does not transcend 'all bounds of decency.' *Id.* at 563. To the contrary, Defendant here has 'done no more than to insist upon his legal rights in a permissible way,' *id* at 554, and is not likely to be subject to liability. This is especially true where both parties agreed contractually to the result.

*Jones,* 2010 WL 2572997 at * 15.

However, to the extent that Plaintiff alleges that Defendants acted outrageously in refusing to respond to Ms. Stewart's notice of rescission and her request for information, Plaintiff has, upon a liberal reading of the SAC, satisfied this element. Nevertheless, Plaintiff has done nothing to plead or to suggest that Defendants intended to cause distress, or recklessly ignored the near certainty that their actions would cause distress. Again, when Plaintiff pleads, as she has, that Defendants came to this action in 2009, three years after she refinanced her property, their must be some plausible allegation suggesting that they acted intentionally seeking to cause her harm, or recklessly disregarding the near certainty that they would in any acts they took since that time. Such an allegation based on plausible assertions is wholly lacking from the SAC. Therefore this count is dismissed as to both Mellon and Litton.

Because Plaintiff has already twice been given leave to amend her complaint, leave to amend the SAC is not again granted. *Sisseton-Wahpeton Sioux Tribe v. United States,* 90 F.3d 351, 355 (9th Cir. 1996). (holding that discretion to dismiss without leave to amend is particularly strong where leave to amend has been previously granted).

**IT IS THEREFOR ORDERED:**

1. Granting Plaintiff's Motion For Leave To Amend Complaint (Doc. 49).

2. Directing Plaintiff to file her Second Amended Complaint.

3. Granting in part and denying in part Defendant Mellon and Litton's Motion To Dismiss (Doc. 28) as it pertains to the Second Amended Complaint. Specifically, Defendants' Motion to Dismiss is granted as to both Defendants on counts one, two, four, five, six, nine and ten of the SAC. The motion is also granted on counts three and seven of the SAC as to Litton only. Defendants' Motion is denied as to count eight as to both Defendants, and denied as to Defendant Mellon on counts three, and seven of the SAC.

DATED this 29th day of July, 2011.

*G. Murray Snow*
G. Murray Snow
United States District Judge